IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MASTER STUCCO, LLC, | ) |
| | ) |
| **Plaintiff / Counter-Defendant,** | ) |
| | ) |
| v. | ) NO. 3:19-cv-01064 |
| | ) |
| CLEVELAND CONSTRUCTION, INC., | ) JUDGE CAMPBELL |
| JOHN SLAPNICKER, and ELLIOT | ) MAGISTRATE JUDGE HOLMES |
| CHRISTIANSEN | ) |
| | ) |
| **Defendants / Counter-Plaintiffs.** | ) |

## MEMORANDUM

Pending before the Court are the Parties' motions for partial summary judgment. Defendants Cleveland Construction, Inc., John Slapnicker, and Elliot Christiansen moved for judgment in their favor on the following claims asserted by Plaintiff Master Stucco, LLC: Count One (Declaratory Judgment), Count Eight (Fraud), Count Nine (Negligent Misrepresentation), and Count Ten (Promissory Fraud).[1] (Doc. No. 38). Plaintiff responded to Defendants' Motion (Doc. No. 51), and Defendants filed a reply (Doc. No. 56). Plaintiff filed a separate Motion to Partial Summary Judgment seeking judgment in its favor on Count One (Declaratory Judgment) of its complaint. (Doc. No. 47). Defendants responded to Plaintiff's Motion (Doc. No. 58), and Plaintiff filed a reply (Doc. No. 60). In support of the Motions, the parties filed and responded to statements of undisputed material facts (Doc. Nos. 40, 49, 53, 59). Plaintiff filed Additional

---

[1]  Defendants' counterclaim (Doc. No. 8) alleging a single claim for breach of contract is not the subject of the pending motions. Accordingly, all references to the Complaint are to Plaintiff's Complaint (Doc. No. 1). For ease of reference, the Court refers to Master Stucco, LLC, as "Plaintiff," and Cleveland Construction, Inc., John Slapnicker, and Elliot Christiansen as "Defendants."

1

Asserted Disputed Material Facts in Response to Defendants' Motion for Summary Judgment. (Doc. No. 40). Defendants responded to Plaintiff's additional statement of facts, agreeing that those facts are in dispute. (Doc. No. 57).

## I. BACKGROUND

In June 2018, Cleveland Construction, Inc. ("CCI"), a commercial general contractor, asked Master Stucco to bid on completing the stucco and exterior finish work on a hotel that was already under construction.[2] (Doc. No. 59, ¶¶ 1, 4, 6). After receiving plans for the project, walking the construction site with CCI's project manager, John Slapnicker, and "complet[ing] a takeoff measurement of the areas on the plans where stucco was to be applied," Glen Cruzen, founder and president of Master Stucco, submitted a written proposal. (*Id.*, ¶ 7; Doc. No. 48-2).

The proposal stated, "Install EIFS stucco as per plans. Here is an initial budget breakdown and the costs per item. The costs increased based on the additional items we discussed at our meeting earlier this week. My initial budget was also a bit low." (Doc. No. 48-2). The proposal included a breakdown of the total square footage for different depths of foam and direct application, and line items for add-ons and other expenses such scaffolding setup. (Doc. No. 59, ¶ 8; Doc. No. 48-2). The total price given was $269,439.23. (Doc. No. 48-2). The proposal concluded, "I look forward to meeting with you on Tuesday to discuss the above work in more detail. I believe our numbers to be correct, but if this amount exceeds your budget, please check at our measurements." (*Id.*).

---

[2] The work to be performed by Master Stucco included stucco and EIFS (exterior insulation and finish systems). The Court has endeavored to accurately reflect that the project included both stucco and EIFS, however, no significance should be drawn from the Court's use of use of "stucco" rather than "stucco/EIFS" on occasion in this Memorandum.

Mr. Slapnicker responded that the price exceeded his budget. (*Id*., ¶ 9). He also told Mr. Cruzen that other contractors submitted lower bids and that CCI had calculated a lower square footage as less than that calculated by Master Stucco. (*Id*.).

Following these conversations, Mr. Cruzen recalculated the total square footage of stucco/EIFS application and concluded that the initial calculations were substantially correct. (Second Cruzen Decl., Doc. No. 52, ¶ 12; June 27, 2018 email, Doc. No. 51-2). On July 16, 2018, sent a revised proposal to CCI which reduced the price to $204,835.77. (Doc. No. 48-3). The revised proposed included "a few additional areas … that were not detailed in the last written proposal" and deducted the cost of existing materials located on the job site. (Doc. No. 51-2). This proposal did not provide itemized calculations, but stated that the total amount "to complete the installation as shown on the plans" was $204,835.77. (Doc. No. 48-3).

On July 18, 2018, Mr. Slapnicker emailed Master Stucco authorization to proceed. (Doc. No. 48-5). The email stated:

> Please consider this your authorization to proceed with Furnishing and Installing all **EIFS, Direct Applied Stucco and Metal Flashings as related to this scope of work. This scope includes all work shown for the Hotel, Commercial Building, and Parking Garage** for the Springhill Suites located in Brentwood, TN. Additionally, this includes the provided materials by CCI as indicated in the attached email correspondence, that additionally includes Break Metal Flashings and Fast Flash Joint Sealant. A formal subcontract agreement will be issued in the amount of **$204,836.00 (Two Hundred Four Thousand, Eight Hundred and Thirty Six Dollars)**, all construction documents issued up thru post bid addendum 1, Exterior Elevation Drawing Revision dated 4/4/18 and enumerated in the attached documents, etc. Please procure all design documents, permits, submittals, shop drawings, and materials for the Work. Provide all applicable notices to the governing authorities. Applicable state and local tax to be paid by Subcontractor. A 100% Payment and Performance Bond is not included in this Agreement.
>
> Furthermore, this Authorization to Proceed is based upon the agreed upon durations that will be reflected in the next Construction Schedule update. The overall agreed upon duration is based upon the commencement of

3

> work on the East Elevation starting 7/23/18 and completing the project on the South Elevation of the Parking Garage on 10/12/18.
>
> …
>
> Last, attached is a blank sample copy of our subcontract agreement for your review. The formal subcontract agreement will be sent to you under separate cover and will include job specific information and work scope items …

(Doc. No. 48-5).

Master Stucco began work on the project on July 21, 2018. (Doc. No. 59, ¶ 14). In August 2018, the parties agreed that CCI would make progress payments based on a Schedule of Values prepared by Mr. Slapnicker. (*Id*.). Master Stucco submitted applications for payment at the end of July and August totaling over $30,000. (*Id*.).

Between July 18, 2018 (the date of the emailed authorization to proceed) and September 2018, the parties continued to negotiate the terms of a written contract. (Doc. No. 59, ¶ 15). The parties agreed to a number of changes to CCI's form contract, resulting in at least two draft versions of the contract. (*Id*., ¶¶ 17-20).

By September 21, 2018, the parties had not reached agreement as to the terms and CCI, which had not paid Master Stucco for any of the work performed, refused to pay until Master Stucco signed a written contract. (Doc. No. 59, ¶ 23, 24). Mr. Cruzen was leaving for a three-week vacation on September 22, 2018, and wanted to ensure Master Stucco would be paid. (Doc. No. 59, ¶ 24). He emailed Elliot Christiansen, Mr. Slapnicker's supervisor, a signed signature page of the most recent version (dated September 6, 2018) of the revised agreement.[3]

---

[3] Master Stucco states that the signatures pages for the different versions of the agreement were the same, so it is not possible to determine whether the signature page he signed was that of an earlier version of the agreement. (Doc. No. 59, ¶ 24).

4

(Doc. No. 58, ¶ 24). In the email Mr. Cruzen stated that the September 6 version (referred to by the parties as the "Second Revised Proposal") did not reflect a number of changes that the parties had agreed would be part of the contract and included five additional paragraphs which he asserted "are a part of this contract." (Doc. No. 48-14). He concluded the email stating, "I hope that the above is acceptable to you. My son Christopher will meet with you at the job site and will prove to you 3 copies of the entire agreement. Should any further changes need to be made, Chris is hereby authorized to make those changes and to sign the revised papers." (*Id*.).

Mr. Christiansen responded that he needed Mr. Cruzen's initials on each page of the agreement because "we made changes in the contract." (*Id*.). He did not comment on the additional changes Mr. Cruzen mentioned in his email. (*Id*.). Mr. Cruzen then printed and initialed what he thought was the Second Revised Proposal and emailed those pages to Mr. Christiansen. (*Id*., ¶ 29). Unfortunately, in his haste to catch his plane, he mistakenly initialed and sent an earlier version of the agreement. (*Id*.).

The business relationship between CCI and Master Stucco did not end amicably. On November 26, 2019, Master Stucco initiated this action bringing a number of claims against CCI, John Slapnicker, and Elliot Christiansen including claims for declaratory judgment, breach of contract, fraud, negligent misrepresentation, and promissory fraud. (Doc. No. 1). CCI filed a counterclaim alleging a single count of breach of contract. (Doc. No. 8).

The parties filed competing motions for summary judgment on Plaintiff's claim for declaratory judgment. Defendants also seek judgment in their favor on Plaintiff's claims for fraud, negligent misrepresentation, and promissory fraud.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III.     ANALYSIS

#### A. Declaratory Judgment

Plaintiff seeks declaratory judgment declaring that the July 18, 2018, email from Mr. Slapnicker granting Master Stucco "Authorization to Proceed" (Doc. No. 48-5) is a valid and enforceable contract between CCI and Master Stucco and that the parties did not enter into a valid and enforceable contract on September 21 or 22, 2018.  In other words, that neither the document Mr. Cruzen initialed (the "First Revised Proposal"), nor the document he thought he signed (the "Second Revised Proposal"), is an enforceable contract between the parties. (Doc. No. 47 at 1; *see also* Doc. No. 1, ¶¶ 68-71).

Defendants do not dispute that CCI and Master Stucco had a contractual relationship. They argue that there are questions of fact regarding the terms of the contract and that the issue is, therefore, inappropriate for declaratory judgment.

With regard to the emailed Authorization to Proceed, Defendants contend that the email did not form a contract between the parties because there was not a meeting of the minds as to the essential terms of the contract, most notably the scope of work. (Doc. No. 58 at 4). Defendants note that the "Authorization to Proceed" does not adopt the scope of work provided in Master Stucco's bid offer and argue that "CCI never agreed that [Master Stucco's] scope of work was limited to '24,086 square feet of EIFS and 7400 feet of direct applied stucco' as alleged by Master [Stucco]." (*Id*. at 3-4).

Plaintiff agrees that the language of the Authorization to Proceed does not identify the scope of work as the square footage of EIFS and stucco application contained in Master Stucco's bid and further agrees that the Authorization to Proceed does not clearly define the scope of work at all. (Doc. No. 60 at 3).  Plaintiff contends, however, that Master Stucco's bid

7

and CCI's Authorization to Proceed formed a contract notwithstanding the ambiguities regarding the scope of work because "the Authorization to Proceed is the result of a valid offer and acceptance" and ambiguities regarding the scope of work can be resolved through well-established rules of contract construction or by the finder of fact. (*Id*. at 3-4).

Under Tennessee law, and generally, a contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, [must be] free from fraud or undue influence, [must] not [be] against public policy and [must be] sufficiently definite to be enforced." Se*vier Cty. Schs. Fed. Credit Union v. Branch Banking and Trust Co*., 990 F.3d 470, 475 (6th Cir. 2021) (quoting *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co*., 160 S.W.3d 521, 524 (Tenn. 2005)). "If the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 774 (Tenn. Ct. App. 2015) (quoting *Peoples Bank of Elk Valley v. ConAgra Poultry Co*., 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991)).

The parties agree that, at a minimum, the Authorization to Proceed does not itself clearly define the scope of work to be performed by Master Stucco and that they continued to negotiate terms, including payment terms, for months after CCI emailed the Authorization to Proceed. (Doc. No. 59, ¶ 15). The Court finds there are questions of fact regarding whether the parties had reached an agreement regarding the terms of the contract on July 18, 2020, or thereafter. Accordingly, declaratory judgment on this issue is not appropriate at this time.

## B. Fraud and Negligent Misrepresentation

To succeed on a claim for fraud, a plaintiff must prove: "(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when made; (3) that the representation involved a material fact; (4) that the defendant either knew the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation." *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012).

The Tennessee Supreme Court has adopted the Restatement (Second) of Torts § 552 (1977) for negligent misrepresentation claims. *Hodge*, 382 S.W.3d at 344. Negligent misrepresentation is established if a plaintiff demonstrates: (1) the defendant acted in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous interest); (2) that defendant supplied false information to the plaintiff meant to guide him or others in their business transactions; (3) that defendant did not exercise reasonable care in obtaining or communicating the information; and (4) that the plaintiff justifiably relied on the information. *Homestead Grp. v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

Federal Rule of Civil Procedure 9(b) requires that parties "alleging fraud … must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) also governs claims for negligent misrepresentation brought under Tennessee Law. *Harris v. Nationwide Mutual Fire Ins. Co.*, 357 F. Supp. 3d 768, 777-78 (M.D. Tenn. 2019). To satisfy Rule 9(b), a complaint of fraud, "at a minimum, 'must allege the time, place, and content of the

alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants' and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444 (6th Cir. 2008). "Rule 9(b) is intended to provide the defendants with 'notice of the specific conduct with which they were charged,' so that the defendants can prepare responsive pleadings." *Id*. at 445.

The Complaint provides the following allegations as the basis for the claim of fraud.

> 109. Mr Slapnicker, acting on behalf of CCI, intentionally misrepresented to Master Stucco that CCI had calculated the square footage of EIFS and stucco application called for by the plans, and that the result of this calculation was less square footage than contained in Master Stucco's bid.
>
> 110. Master Stucco justifiably relied on this misrepresentation and suffered damages as a result.

(Compl., Doc. No. 1). Master Stucco makes identical allegations for the negligent misrepresentation claim. (*Id*., ¶¶ 115, 116).

Defendants' Motion for Partial Summary Judgment addresses the single misrepresentation alleged in the fraud and negligent misrepresentation count of the Complaint. (*See* Doc. No. 39). In its Response to Defendants' Motion for Partial Summary Judgment (Doc. No. 51), Plaintiff states that its misrepresentation claims involve not one but three separate misrepresentations by Mr. Slapnicker. (Doc. No. 51 at 15). The first alleged misrepresentation is that alleged in the fraud and negligent misrepresentation counts stated above. (*Id*.). The second two statements, which Plaintiff acknowledges are not specifically included in Counts Eight or Nine (the claims for fraud and negligent misrepresentation), are: (1) statements concerning which walls in the parking garage required stucco/EIFS; and (2) the statement that CCI received lower bids from other subcontractors. (*Id*. (citing Compl., Doc. No. 1, ¶¶ 19-20)).

Defendant argues that the statements not specifically alleged in the fraud and negligent misrepresentation counts cannot serve as a basis for these claims because they were not pleaded with particularity in the Complaint as required by Fed. R. Civ. P. 9(b). (Doc. No. 56 at 3).

The Court agrees. While the statements now alleged to be misrepresentations are mentioned in the Complaint, there is no indication that the claims of fraud and negligent misrepresentation are predicated on these statements nor are these statements even identified as misrepresentations. (*See* Compl., Doc. No. 1, ¶¶ 19-20). Plaintiff cannot inject new allegations of fraud into the case at this stage.

The misstatement alleged in the Complaint is that Mr. Slapnicker falsely told Mr. Cruzen that CCI had calculated the square footage of EIFS and stucco application called for by the plans, and that the result of this calculation was less square footage than contained in Master Stucco's bid. (Compl., Doc. No. 1, ¶¶ 109, 115). Explaining his detrimental reliance on this statement, Mr. Cruzen stated that, prior to submitting the second bid, he was concerned that the bid did not reflect all of the EIFS and stucco application called for in the plans. (Second Cruzen Decl., Doc. No. 52, ¶ 12). When Mr. Slapnicker told him that CCI's square footage calculations were lower, Mr. Cruzen concluded that, if anything, he had overcalculated the square footage and "ceased its search for any additional stucco and EIFS applications in the plans." (*Id.*). Mr. Cruzen stated that if he had "known that Mr. Slapnicker had misrepresented what the plans called for in the parking garage, that CCI had performed its own calculations of the total square footage of stucco/EIFS and calculated less square footage than Master Stucco had, and that CCI had not received lower bids from other contractors, Master Stucco would have increased its bid, and [] would not have executed either the First Revised or Second Revised Proposals without, at a minimum, increasing the contract price." (*Id.*, ¶ 13).

Defendants claim Master Stucco cannot show the element of reliance because Master Stucco relied on its own calculations, not any information provided by CCI, to determine its bid. (Doc. No. 39 at 9-10). Defendants also argue Master Stucco cannot prove falsity because Mr. Slapnicker did not give any specificity about the square footage, he only stated that it was less than that contained in Master Stucco's bid. (*Id*. at 10).

Defendants have not shown that Plaintiff cannot prove the falsity element of the claim. The lack of specificity has no bearing on the truth or falsity of the statement. Moreover, Plaintiff provided evidence from which a jury could conclude that CCI never made any square footage calculations. (Slapnicker Dep., Doc. No. 51-1 at PageID# 899 ("Q: Had you or anyone for CCI done a takeoff on the square footage for EIFS and stucco? A: I did not and I don't know if anybody else did or not.")).

With regard to the element of reliance, the Court notes that Plaintiff claims that he relied on the three alleged misrepresentations discussed above in calculating the bid price. However, two of the three alleged misrepresentations are not properly a basis for the fraud claim. With regard to the alleged misrepresentation about the square footage calculation, Mr. Cruzen stated that because Mr. Slapnicker told him CCI's square footage calculation was less than Master Stucco's he concluded that he had not under calculated the square footage and stopped looking in the plans for any additional stucco and EIFS applications he might have missed the first time. (Second Cruzen Decl., Doc. No. 52, ¶¶ 12-13). Bringing Plaintiff's argument full circle, Plaintiff asserts that if Mr. Slapnicker had not told him that CCI had a lower square footage calculation, Master Stucco would have continued looking in the plans for additional stucco and EIFS applications, would have found additional applications, and would have increased its contract price to reflect those additional applications.

Putting aside the other elements of the fraud and misrepresentation claims, given the availability of concrete sources of information from which the square footage could have been determined, and that Master Stucco relied entirely on its own measurements and calculations, Plaintiff cannot establish that it justifiably relied on Mr. Slapnicker's statement to stop examining the plans on which it based the bid. "Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach." *Roopchan v. ADT Sec. Sys. Inc.*, 781 F. Supp. 2d 636, 651 (E.D. Tenn. 2011 (citing *Soloman v. First Nat'l Bank of Nashville*, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)). Master Stucco does not claim that information from which to calculate accurate square footage was not in the plans, only that because of Mr. Slapnicker's statement, Mr. Cruzen did not review the plans again prior to submitting the second proposal. It was not until several weeks after Mr. Slapnicker made the statement that Master Stucco submitted a second bid after "going through the measurements again, verifying the measurement [his] son calculated." (*See* June 27, 2018 email, Doc. No. 51-2; Second Bid (July 16, 2018), Doc. No. 48-3). Moreover, Master Stucco has not identified areas of the plans that were initially overlooked, and there is no evidence to suggest that if Mr. Cruzen had "continued to search the plan for additional stucco and EIFS applications" that he might have missed the first time, that he would have found them and increased the bid.

In summary, the Court finds there is not sufficient evidence from which a reasonable jury could find that Master Stucco miscalculated the square footage required for the job due to justifiable reliance on the alleged misstatement. Accordingly, Defendants' motion for summary judgment on the fraud and negligent misrepresentation claims will be granted.

## C. Promissory Fraud

The elements of a claim for promissory fraud are the same as for fraud except that the "misrepresentation may embody a promise of future action without the present intention to carry out the promise." *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990). "In order for the plaintiff to demonstrate the lack of present intent or that the statement was false when made, the plaintiff must do so 'by evidence other than that failure to keep the promise or subjective surmise or impression of the promise.'" *Id.* at 593.

Plaintiff's claim for promissory fraud is based on two alleged misstatements. First, Plaintiff alleges that Elliot Christiansen "promised that any areas of EIF[S]/stucco application that were not in Master Stucco's bid but were later discovered to be in the plans would be covered through change orders." (Compl., Doc. No. 1, ¶ 120). Second, Plaintiff alleges Mr. Slapnicker promised that CCI would tender a check in the amount of $23,101.20 on March 22, 2019. (*Id.*, ¶ 122).

1. Change Orders

The statement about issuing change orders is from an email from Mr. Christensen to Mr. Cruzen on September 10, 2018. Plaintiff attached a copy of the email to the Complaint. (Doc. No. 1-10). In response to Mr. Cruzen's concern that the price did not include areas in the plans where he was uncertain whether stucco was called for, Mr. Christiansen wrote:

> Any change in the Subcontract Price due to increases or decreases in the scope of work will be incorporated into the Subcontract Agreement via Change order in accordance with Article 15 of the Subcontract Agreement. You included Direct Applied on the South Elevation of the garage as that is what is shown on the plans, the addition of foam is an additional cost and will be addressed via change order. If there are conflicts on the documents that you are currently reviewing then they will also be addressed via change order if additional costs are applicable.

(*Id.* at PageID# 792).

Defendants argue that Mr. Christiansen's email does not promise to issue change orders to Master Stucco "just because 'Mr. Cruzen had not found [such work] in the plans,'" it promises to issues change order in response to increases or decreases in the scope of work. (Doc. No. 39 at 12). Defendants add that Plaintiff cannot show a lack of intent to issue change orders for areas that were not included in Master Stucco's bid, because CCI issued multiple change orders to Master Stucco for "numerous changes to the scope of work." (Doc. No. 39 at 13 (citing Compl., Doc. No. 1, ¶ 46)).

Plaintiff responds that because Mr. Christiansen's email was in response to Mr. Cruzen's concern that the price did not reflect all of the areas of stucco called for in the plans, "under the circumstances, it was reasonable for Master Stucco to interpret" the email as a promise to issue a change order "for any area of stucco application that Master Stucco did not pick up in the plans." (Doc. No. 51 at 18). Plaintiff then asserts that the September 10, 2018 email is not the primary basis for its fraud claim. (*Id*. at 19). Instead, the claim is based on a statement made by Mr. Christiansen on September 4, 2018, and during multiple other conversations, in which Mr. Christiansen promised to issue change orders for "any areas of EIFS/stucco application that were not in Master Stucco's bid, but were later discovered in the plans." (*Id*.). Plaintiff states that Defendants were aware the September 4, 2018 statement was the basis for his claims because during Mr. Cruzen's deposition, when asked to identify the basis for Master Stucco's promissory fraud claim, Mr. Cruzen identified the September 4, 2018 statement. (*Id*. (citing Cruzen Dep., Doc. No. 51-4 at PageID# 909-910)).

As discussed above, allegations of fraud must be pleaded with particularity in the Complaint. There are no allegations in the Complaint regarding the September 4, 2018 conversation and no suggestion in the complaint that the promissory fraud claim related to Mr.

Christiansen's statement about issuing change orders is based on anything other than the September 10, 2018 email. Discussion of matters not included in the Complaint during a deposition does not meet the pleading requirements of Rule 9(b).

As to the statement upon which the claim is alleged in the Complaint, the September 10, 2018 email states that change orders will issue for "increases or decreases to the scope of work." (Doc. No. 48-8 at PageID# 792). Given that CCI issued numerous change orders, Plaintiff cannot establish that Mr. Christiansen, at the time he sent the email, did not intend CCI to issue change orders. Accordingly, Defendants are entitled to summary judgment Plaintiff's promissory fraud claim that is based on the September 10, 2018 email.

2. March 22, 2019 Payment

On March 18, 2019, CCI issued a notice of default to Master Stucco. (Doc. No. 53, ¶ 24). On March 20, 2019, Mr. Slapnicker sent Mr. Cruzen an email stating, in part: "In summary, if we can agree on a schedule, MS is onsite by Friday working the scheduled locations we will agree to partially remove the Default and give a check for half of the January payment to you personally on site Friday this week." (Doc. No. 41-1 at PageID# 320). Master Stucco claims that in reliance on this promise of payment, it purchased $3,000 of materials and sent its team to work on Friday, but CCI did not deliver the payment as promised. (Doc. No. 52, ¶¶ 16-18).

Defendants argue that the alleged promise by Mr. Slapnicker to tender a check on March 22, 2019, was not a promise; it was part of a settlement offer made by CCI related to the contract dispute between the parties, and that payment was conditioned on the parties agreeing on a schedule, which Defendants claim they did not do. (Doc. No. 39 at 14). Defendants further

16
Case 3:19-cv-01064   Document 61   Filed 01/31/22   Page 16 of 18 PageID #: 1006

argue that Master Stucco did not change its position in reliance on the promise of payment because it was "bound by the contract to work." (*Id*.).

Plaintiff responds that Defendants never intended agree to a schedule as evidenced by the fact that Plaintiff sent a proposed schedule and no one at CCI "criticized or rejected the schedule in any way." (Second Cruzen Decl., Doc. No. 52, ¶ 16). In addition, even if Master Stucco was contracted to work, it was not contracted to work without payment.

Plaintiff has provided sufficient evidence from which a jury could conclude that Mr. Slapnicker promised Plaintiff that it would be paid half the amount it was owed for work in January if its crew was onsite working that day and that Mr. Slapnicker never intended CCI to pay Master Stucco that day. There is no dispute that Master Stucco's crew showed up to work as schedule. There is also no dispute that CCI did not deliver Master Stucco a check that day as promised. Defendants' argument that CCI could not be bound by the promise because the parties never agreed to a schedule is not well taken, particularly given that Plaintiff proposed a schedule to which CCI voiced no opposition.

Accordingly, Defendants' motion for summary judgment on the promissory estoppel claim related to the promise of payment will be denied.

## IV. CONCLUSION

For the reasons stated, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 47) will be DENIED. Defendants' Motion for Partial Summary Judgment (Doc. No. 38) will be GRANTED in part, and DENIED in part as follows: Defendants' motion for summary judgment on Count One (Declaratory Judgment), Count Eight (Fraud), and Count Nine (Negligent Misrepresentation) is DENIED; Defendants' motion for summary judgment on Count Ten (Promissory Fraud) is GRANTED with regard to the portion of the claim related to an alleged promise to issue change orders, and DENIED with regard to that portion of the claim related to a promise of payment in March 2019.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE